## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DAVID WILSON SR., | **Case No.:** 2:26-cv-10374 |
| Plaintiff, | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| EQUIFAX INFORMATION SERVICES, LLC, | 1. **FCRA, 15 U.S.C. § 1681,** *et seq.* |
| Defendant. | |

Plaintiff David Wilson Sr. ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* against Defendant Equifax Information Services, LLC ("Equifax" or "Defendant").

## I.      INTRODUCTION

1.      Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, against Equifax, a consumer reporting agency, for reporting inaccurate information on Plaintiff's consumer report. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

1

2.    Plaintiff's Complaint also alleges that Defendant violated 15 U.S.C. § 1681, *et seq.,* by failing to reasonably investigate Plaintiff's consumer dispute, which resulted in Defendant reporting inaccurate information about Plaintiff.

## II.    JURISDICTION AND VENUE

1.    The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

2.    Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

3.    Defendant transacts business here; as such, personal jurisdiction is established.

## III.    PARTIES

4.    Plaintiff is a natural person residing in the city of Detroit, Michigan.

5.    Plaintiff is a consumer as defined by the FCRA, 15 U.S.C. § 1681a(c).

6.    Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia, 30309. Equifax can be served through its

2

registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

7.      Upon information and belief, Equifax disburses consumer reports to third parties under contract for monetary compensation.

8.      At all relevant times, Defendant acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

9.      Any violations by Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

## IV.    FACTUAL BACKGROUND

10.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

11.     The United States Congress decided that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

12.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

13.    The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

14.    Defendant reports consumer information about Plaintiff and other consumers through the sale of consumer reports.

15.    Defendant's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

16.    Defendant obtains consumer information from various sources, including furnishers that provide consumer information to the CRAs, and information the CRAs independently source themselves or through third party

providers, vendors or repositories, including computerized reporting services like PACER.

17.    Defendant regularly seeks out and procures consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports Defendant sells to third parties for a profit.

18.    The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

19.    Defendant's unreasonable policies, procedures, and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

20.    Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

21.    The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Equifax) to make lending decisions. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models) to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in the Defendant's reports.

22.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

23.     The information reported by Defendant contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in the Defendant's consumer reports.

24.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

25.     "Payment history" refers to whether a consumer has paid his or his bills in the past, and whether these payments have been timely, late, or missed.

26.     In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist.

27.     The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

28.     However, after a delinquent account has been remedied, a consumer's FICO score may increase so long as the account stays current.

29.     Defendant voluntarily obtained Plaintiff's consumer bankruptcy information and reported it in individual account tradelines and the Public Records section of Plaintiff's consumer reports.

30.     Defendant is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

31.     Defendant is also aware of the effect of a reaffirmation agreement, which allows a consumer to remain liable for the debt and excludes the debt from the bankruptcy discharge.

32.     Information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources Defendant obtains the bankruptcy case information.

33.     Additionally, the Defendant receives actual notice of reaffirmation agreements from furnishers of account/tradeline information.

34.     Additionally, in or around 2009, Defendant implemented its own automated software "bankruptcy scrub" following the settlement agreement in *White v. Experian Info. Sols.*, No. SACV 05-1070 DOC (MLGx), (C.D. Cal. 2008).

35.     The *White* settlement makes clear that the CRAs know or should know that pre-petition, unsecured consumer debts are typically discharged in Chapter 7

proceedings. *Benjamin v. Experian Info. Solutions*, 561 F. Supp. 3d 1330, 1340 (citing *Morris v. Experian Info. Sols.*, 478 F. Supp. 3d at 769).

36.     Defendant's bankruptcy scrub software identifies pre-petition accounts and makes assumptions about which accounts were discharged through the Chapter 7 bankruptcy, even when the furnisher does not update the accounts as discharged.

37.     In other words, Defendant's automated bankruptcy scrub assumes Defendant's notice of a Chapter 7 discharge is in fact notice that a consumer's pre-petition accounts may be reporting inaccurately, and Defendant will overwrite data reported by a furnisher according to its assumptions and algorithms.

38.     However, Defendant has intentionally chosen to disregard knowingly inaccurate open balance and payment obligations of certain types of pre-bankruptcy accounts in Defendant's software programming of its automated "bankruptcy scrub" that it has been employing for well over a decade.

39.     Although Defendant was notified of its inaccurate reporting and had the information necessary to correctly report Plaintiff's account, Defendant failed to verify the information.

40.     Instead, Defendant followed unreasonable procedures that allowed it to blindly rely on the furnishers' deficient investigation and report its results, despite possessing conflicting information about Plaintiff's accounts.

41.     Rather than following reasonable procedures to assure maximum possible accuracy, Defendant inaccurately reports information regarding pre-bankruptcy debts even if that information ignores or contradicts information known and reported by the CRAs themselves.

42.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate reporting following a consumer bankruptcy.

43.     Therefore, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures, including those that result in inaccurate account and payment statuses, both before and after receiving a dispute from the consumer.

*Allegations Specific to the Credit Reporting of Plaintiff*

44.     Plaintiff filed for a "no asset" Chapter 7 Bankruptcy on or about December 18, 2024 in the United States Bankruptcy Court for the Eastern District of Michigan, petition no. 24-51905-tjt.

45.     Plaintiff received an Order of Discharge on or about March 25, 2025.

46.     Thereafter, Plaintiff was not personally liable for his dischargeable debts and these debts have a $0 balance after the bankruptcy discharge.

47.     Defendant prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

48. The allegations in this complaint against Defendant are based on the reporting by Defendant in Plaintiff's May 13, 2025 consumer disclosure.

49. Defendant reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the date of the last status update.

50. Defendant failed to report Plaintiff's consumer bankruptcy information in the Public Records section and/or in one or more individual tradelines of Plaintiff's consumer reports.

51. Notably, the other CRAs, Experian and Trans Union accurately reported Plaintiff's bankruptcy information in the Public Records sections of their respective reports, and in the individual tradelines of their respective reports.

52. Upon information and belief, Defendant received notice of Plaintiff's bankruptcy discharge through its independent collection of Plaintiff's consumer information through vendors such as Lexis-Nexis, as well as from furnishers that provided data regarding the individual tradelines featured on Plaintiff's consumer reports.

53. Defendant also obtains information from other CRAs (who commonly share information).

54.     Defendant is aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

55.     Defendant should have reported Plaintiff's bankruptcy filing and discharge information in the public records section of Plaintiff's consumer reports.

56.     Defendant should have reported **all** of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy, and with a zero-dollar balance.

57.     Rather than accurately report the discharged debts, Defendant reported Plaintiff's accounts with numerous inaccuracies.

### *Inaccuracies in Plaintiff's Consumer Report*

58.     On or about May 13, 2025, Plaintiff obtained a copy of his Equifax credit report.

59.     Upon review of his Equifax credit report dated May 13, 2025, Plaintiff observed several inaccuracies.

60.     As a preliminary matter, Equifax did not indicate that Plaintiff had filed for bankruptcy and received a discharge.

61.     The name, social security number, and address in Plaintiff's Chapter 7 petition match the information listed on his Equifax consumer report.

11

62.     Defendant failed to report Plaintiff's bankruptcy discharge even though Defendant had all the correct personal information for Plaintiff in its database which matched the personal information reported in Plaintiff's Chapter 7 petition (e.g., full name, social security number, address).

63.     Notably, non-parties Experian and Trans Union accurately reported Plaintiff's public record bankruptcy filing and discharge based on the same information.

64.     Additionally, furnishers reported the Plaintiff's discharged/zero account balances, bankruptcy and discharge information to Equifax.

65.     Defendant knew or should have known that Plaintiff's bankruptcy was discharged.

66.     Defendant reported debts that were in fact discharged in bankruptcy and was therefore required to report these as discharged and with zero-dollar balances. However, Defendant's failure to report Plaintiff's bankruptcy – filed in December 2024 and discharged in March 2025 – in Plaintiff's consumer report contributed to the numerous inaccuracies listed in Plaintiff's consumer report.

67.     Upon information and belief, the following furnishers of information accurately reported to Equifax that Plaintiff's accounts were included in Plaintiff's bankruptcy discharge and had a zero-dollar balance after the bankruptcy

filing/discharge, but Defendant rejected or revoked the data furnished to it and inaccurately overrode the reporting of the accounts.

68.      On Plaintiff's consumer disclosure, Defendant inaccurately reported Plaintiff's Self Financial/Lead Bank account, ending with *****6441 and opened in February 2021 (the "Lead Account"), which pre-dated Plaintiff's bankruptcy filing.

69.      The Lead Account was discharged on or about March 25, 2025. Therefore, the Lead Account should have been reported as discharged in bankruptcy.

70.      However, Defendant inaccurately reported the Lead Account with a status of "Charge-Off" and with a balance of $165.00.

71.      Additionally, Defendant inaccurately reported Plaintiff's Verizon Wireless account, beginning with 8896********** and opened in February 2022 (the "Verizon Account"), which pre-dated Plaintiff's bankruptcy filing.

72.      The Verizon Account was discharged on or about March 25, 2025. Therefore, the Verizon Account should have been reported as discharged in bankruptcy.

73.      However, Defendant inaccurately reported the Verizon Account with a status of "Charge Off" with a balance of $1,497.00

74.      Equifax's reporting of the Lead Account and Verizon Account (together the "Accounts") was inaccurate because Equifax failed to indicate that the

Accounts were discharged in Chapter 7 Bankruptcy and failed to report the Accounts with zero-dollar balances.

75.     The status of "Charge Off" in the consumer credit industry means that a debt may still be owed, especially where, as here, the tradelines do not include bankruptcy coding such as included in and/or discharged in bankruptcy, or the tradeline indicates there is a balance and/or past due balance owed on the account before or after the "charge-off."

76.     The national consumer reporting agencies specifically acknowledge that a "charge-off" generally means consumers are still legally responsible for paying the debt.

77.     According to Equifax, a charge-off means the lender has written the account off as a loss and the account is closed to future charges. The timeframe is generally between 120 and 180 days after a consumer becomes delinquent, and a charge-off does not mean that the consumer no longer owes the debt; the consumer is still legally obligated to pay the debt.

78.     Upon information and belief, Lexis-Nexis furnished information to all three CRAs, including Defendant, that indicated Plaintiff had filed for bankruptcy and received a discharge, but Defendant rejected or otherwise failed to report the data it received.

79.     Upon information and belief, some or all of the data furnishers of the foregoing tradelines provided information to all three CRAs, including Defendant, that indicated their corresponding accounts had been discharged in bankruptcy, but Defendant rejected or otherwise overrode the data it received.

80.     In addition, public records reflecting Plaintiff's bankruptcy filing and subsequent discharge are readily available to Defendant through multiple sources such as PACER, but, Defendant failed to review those sources or knowingly rejected them.

81.     In any event, Defendant knew or had reason to know that it reported information contradicted by notices received from third parties.

82.     Defendant inaccurately reported that Plaintiff owed money that he did not actually owe, and also reported inaccurate account statuses and payment histories.

83.     Defendant inaccurately reported the Accounts with balances owed after they were discharged in Chapter 7 Bankruptcy.

84.     Notably, Experian and Trans Union, the two other national CRAs, reported Plaintiff's Accounts accurately on consumer reports produced after Plaintiff's discharge.

85.     Defendant's reporting of the Accounts is patently inaccurate.

86.     If not patently inaccurate, Defendant's reporting of the Accounts is materially misleading.

*Plaintiff's Dispute*

87.     On or about June 27, 2025, Plaintiff mailed a letter to Equifax disputing its inaccurate reporting of the Accounts.

88.     The letter specifically advised that Plaintiff had filed for Chapter 7 bankruptcy in December 2024, received a discharge in March 2025, and included Plaintiff's bankruptcy case number.

89.     The letter also specifically advised Equifax his debts have been discharged and he is no longer liable for those debts.

90.     Upon information and belief, Equifax received Plaintiff's dispute letter.

91.     Upon information and belief, Equifax forwarded Plaintiff's disputes to Self Financial/Lead Bank and Verizon Wireless (the "Furnishers") within 5 business days of receipt.

92.     On or about July 13, 2025, Equifax responded and requested a copy of Plaintiff's discharged bankruptcy documents, despite Plaintiff's dispute containing sufficient information for Defendant to verify Plaintiff's bankruptcy discharge, including Plaintiff's bankruptcy case number, filing date, discharge date, full name, home address, date of birth, and phone number.

93.     On or about September 10, 2025, Plaintiff obtained a new copy of his

credit report from Equifax.

94.    Upon review of his credit report dated September 10, 2025, Plaintiff observed that Defendant was still: 1) not reporting Plaintiff's bankruptcy; and 2) continued to inaccurately report the Accounts.

95.    Defendant did not investigate Plaintiff's dispute, and pursuant to its unreasonable procedures, merely forwarded automated dispute forms to the Furnishers, despite possessing information indicating the Accounts were included in/discharged in Plaintiff's bankruptcy and/or the ability to independently verify that the Accounts were included in/discharged through the same sources it receives consumer bankruptcy information.

96.    Rather than perform a reasonable investigation based on Plaintiff's dispute, readily available public records, and information known by Defendant through Plaintiff's reported payment history on the Accounts, Defendant merely parroted information furnished by Furnishers despite awareness that the information was factually inaccurate and conflicted with information known by the CRAs.

*Plaintiff's Damages*

97.    Upon information and belief, had Defendant accurately reported the Accounts with correct payment histories and statuses, Plaintiff's credit scores would have been better.

98.     After Plaintiff's bankruptcy discharge, on or around January 28, 2026, Plaintiff applied for a credit card with Citibank and was denied due to the aforementioned inaccurate reporting by Equifax.

99.     Defendant's inaccurate reporting of the Accounts, along with additional information belonging to Plaintiff, was published to a potential creditor by Defendant.

100.    As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

101.    As a result of Defendant's conduct, Plaintiff wasted his time, money, and labor by writing and mailing disputes.

102.    As a direct result of Defendant's inaccurate reporting, Plaintiff also suffers actual damages in the form of attorneys' fees incurred, related to Defendant's inaccurate reporting

103.    Plaintiff also suffered economic damages in the form of attorneys' fees incurred for a necessary review of his credit reports.

104.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational damage, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

105.    Defendant's conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

## COUNT I
### Violations of the FCRA, 15 U.S.C. § 1681, *et. seq.*

106.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

107.    The FCRA requires consumer reporting agencies, like Defendant, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

108.    Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report.

109.    Additionally, Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to report accurate information when placed on notice that the information Defendant is reporting is inaccurate, and/or otherwise contradicted by information known by Defendant or reasonably available to Defendant.

110.    Upon information and belief, Defendant regularly conducts voluntary public records searches with the intention of including bankruptcy information on the consumer reports it sells to other parties.

111.    Upon information and belief, Defendant voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge.

112.    In this case, Defendant knew or should have known about Plaintiff's bankruptcy filing and discharge and failed to include that information in Plaintiff's consumer disclosure and in consumer reports published to third parties.

113.    When Defendant received notice of Plaintiff's bankruptcy information, it had an obligation to ensure it reported Plaintiff's discharge and its effects with maximal accuracy.

114.    Unfortunately, Defendant willfully and consciously breached its duties as a CRA and deprived Plaintiff of his right to a fair and accurate consumer report.

115.    Defendant inaccurately reported each of Plaintiff's Accounts as "Charge Off." Additionally reporting a balance of $165.00 for the Lead Account and a balance of $1,497.00 for the Verizon Account.

116.    Defendant possessed information that indicated Plaintiff's Accounts had been included in/discharged in his bankruptcy discharge.

117. If not, information concerning Plaintiff's bankruptcy discharge is reasonably available from the same sources of consumer bankruptcy information the Defendant procures.

118. Defendant knows or should have known of its obligations under the FCRA. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Defendant from which it is on notice of its unreasonable procedures concerning the reporting of debts during and after bankruptcy.

119. Even after Plaintiff notified Defendant of the inaccurate information it included in Plaintiff's credit file, it continued to inaccurately report the Accounts with notations other than "included in bankruptcy" despite having the ability to independently confirm the information detailed in Plaintiff's dispute.

120. Defendant failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on the Furnishers' investigation of the dispute and blindly reporting its results despite possessing conflicting information.

121. Defendant also failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by failing to verify that Plaintiff discharged the Accounts following Plaintiff's dispute, which information is reasonably available from the same sources the CRAs procure consumer bankruptcy information.

122.    When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

123.    When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

124.    Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnishers of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

125.    Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, Defendant violated the FCRA by failing to perform a reasonable reinvestigation of the disputed information even after Plaintiff notified it of its inaccurate reporting of the Accounts.

126.    Defendant's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

    i.    Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

    ii.    Failing to consider all relevant information while investigating Plaintiff's dispute.

    iii.    Failing to include all relevant information when notifying the Furnishers of Plaintiff's dispute.

127.    Instead of reasonably reinvestigating Plaintiff's dispute, Defendant continued to report the Accounts erroneously.

128.    Defendant's acts, as described above, were done willfully and knowingly; or, alternatively were negligent.

129.    Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

130.    Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendant inaccurately reporting the Accounts, and otherwise failing to report that the debts as discharged in bankruptcy.

131.    Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

132.    Defendant is a direct and proximate cause of Plaintiff's damages.

133.    Defendant is a substantial factor in Plaintiff's damages.

134.   Therefore, Defendant is individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681, *et seq*.

## V.   **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment be entered against Defendant for the following:

A. An award of declaratory judgment that Defendant violated the FCRA;

B. An award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C. An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D. An award of punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E. An award of costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G. Any other relief that this Court deems appropriate.

## VI.   **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

RESPECTFULLY SUBMITTED on February 3, 2026

/s/ Adam Hubbi
Adam Hubbi, CA #359827
CONSUMER JUSTICE LAW FIRM PLC
8095 N. 85th Way
Scottsdale, AZ 85258
T: (602) 807-1505
F: (480) 613-7733
E: ahubbi@consumerjustice.com